*40
 
 KELLY, Associate Judge, Retired:
 

 Following the return of a jury verdict of guilty to one count of making threats to do bodily harm, D.C.Code § 22-507 (1973) [re-codified as D.C.Code § 22-507 (1981)], the trial court, upon appellee’s motion, entered a judgment of acquittal, holding that the government failed to establish the jurisdiction of the Superior Court over the criminal act charged. We conclude to the contrary. Accordingly, we reverse and remand for reinstatement of the jury’s verdict.
 

 I
 

 On the evening of August 19, 1980, Gail Beagle, the complainant, received approximately forty telephone calls at her residence in the District of Columbia. The same voice spoke to her each time. Complainant identified the voice each time as appellee’s.
 
 [1]
 
 During two distinct phone calls, appellee stated respectively, “Gail Beagle, I am going to kill you,” and “I’m going to have a bomb waiting for you.” Complainant testified that she believed ap-pellee’s threats. The substantive trend of the phone calls from their inception conveyed appellee’s increasing desire to harm her. In complainant’s words, “I believe that she wanted me dead.”
 

 The above facts were adduced by the government at trial. After the close of the government’s case, the defense rested without introducing evidence and moved for a judgment of acquittal. The motion alleged in part that the Superior Court lacked subject matter jurisdiction over the crime charged; the defense argued that the government failed to establish that the telephone calls originated in the District of Columbia. The court denied the motion, ruling that the government had introduced sufficient proof that the threatening calls were received in the District of Columbia.
 

 The jury returned a verdict of guilty. Upon appellee’s timely post-verdict motion for judgment of acquittal or new trial, the court reversed its prior ruling and held that the government failed to establish the jurisdiction of the Superior Court over the charged offense. The government appeals.
 

 II
 

 As a court of general jurisdiction, “the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia.” D.C. Code § 11 — 923(b)(1) (1973) [recodified as D.C.Code § ll-923(b)(l) .(1981) ]. We have interpreted this language to limit the jurisdiction of the Criminal Division of the Superior Court to criminal acts which occur within the geographical boundaries of the District of Columbia, see
 
 Jackson v. United States,
 
 441 A.2d 1000, 1004 (D.C.1982);
 
 In re L.M.,
 
 432 A.2d 692, 695 (D.C.1981) (per curiam);
 
 Mundine v. United States,
 
 431 A.2d 16, 17 (D.C.1981);
 
 In re A.S.W.,
 
 391 A.2d 1385, 1390 (D.C.1978);
 
 accord State v. McDowney,
 
 49 N.J. 471, 231 A.2d 359 (1967) (essential element necessary to invoke jurisdiction in criminal cases is that the crime be committed in the state in which the case is tried);
 
 Bowen v. State,
 
 206 Md. 368, 111 A.2d 844 (1955) (an offense against the laws of the State of Maryland is punishable only when committed within its territory); consistent with the requirements of article III, section 2, clause 3, and the sixth amendment to the United States Constitution that criminal offenses be prosecuted in the state or district in which they were committed.
 
 See In re A.S.W., supra,
 
 391 A.2d at 1387.
 
 See also Jackson v. United States, supra,
 
 441 A.2d at 1003. Nonetheless, the criminal act alone need not constitute the offense. Where it serves as one of several constituent elements to the complete offense, we have found jurisdiction to prosecute in the Superior Court, even though the remaining elements occurred outside of the District.
 
 See Adair v. United States,
 
 391 A.2d 288,
 
 *41
 
 291 (D.C.1978);
 
 Jordan v. United States,
 
 350 A.2d 735, 738 (D.C.1976).
 
 Accord State v. Jones,
 
 51 Md.App. 321, 443 A.2d 967 (1982) (reversing the trial court’s finding of no jurisdiction and holding, after a review of the general law, that the jurisdictional concept of “continuing offenses” is embodied in the common law of Maryland).
 

 Appellee does not dispute the government’s evidence that she placed the threatening phone calls to complainant. She contends, however, as she did in her motion for judgment of acquittal, that, since no evidence was introduced to establish that she placed the calls from within the District of Columbia, the government failed to prove a criminally proscribed act. Presuming that § 22-507 prohibits merely the act of uttering threatening words without regard to their consequences, appellee urges us to affirm the trial court’s finding that it lacked jurisdiction over her prosecution.
 

 Appellant United States directly rebuts appellee’s “unit of prosecution” argument, theorizing that the utterance of threatening words does not constitute a threat within the meaning of the statute,
 
 i.e.,
 
 is not criminally prosecutable, until the words are communicated.
 
 [2]
 
 The making of a threat entails three stages: utterance, transmittal and communication. Once the crime of making threats is complete, the defendant may be prosecuted in any jurisdiction where one or more steps occurred.
 
 See Adair v. United States, supra.
 
 Hence, according to the government, the jurisdiction of the trial court was established by proof that the complainant received the threats within the District — at which time the threatening act was complete and first chargeable as a crime.
 

 In this case of first impression, the issue is whether, without proving from where appellee placed the subject threatening telephone calls, the government satisfactorily established the subject matter jurisdiction of the Superior Court over her prosecution for making threats to do bodily harm. D.C. Code § 22-507 (1973). Resolution of this issue requires both a determination of the proscriptive scope of § 22-507 and an evaluation of whether the government’s uncontested evidence of appellee’s conduct sufficiently established the trial court’s jurisdiction.
 

 The language of the statute under which appellee was charged does not lend itself to easy construction.
 
 [3]
 
 Section 22-507 states:
 

 Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than six months, or both, and, in addition thereto or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding one year.
 

 “Its phrasing is hardly ideal in that its plain thrust is in terms of prescribing punishment for the contemplated conviction.”
 
 Gurley v. United States,
 
 308 A.2d 785, 787 (D.C. 1973). We have interpreted the elements of this misdemeanor to be the same as those of its subsequently enacted felony counterpart, D.C.Code § 22-2307 (1973) [recodified as D.C.Code § 22-2307 (1981)].
 
 United States v. Young,
 
 376 A.2d 809 (D.C.1977). That provision states:
 

 Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more than $5,000 or impris
 
 *42
 
 oned not more than twenty years, or both.
 

 Section 22-2307 plainly phrases the conduct it prohibits as “whoever threatens.” To “threaten” is “to utter threats against.” Webster’s Third New International Dictionary (1966). A “threat,” in turn, is defined as “[a]
 
 communicated
 
 intent to inflict physical or other harm on any person or on property.” Black’s Law Dictionary (1979) (emphasis added).
 
 [4]
 
 We read these definitions together to say that a person “threatens” when she utters words, which are intended to convey her desire to inflict physical or other harm on any person or on property, and these words are communicated to someone.
 

 We find implicit in our threats statutes the same notion: to be subject to criminal prosecution, an individual must do more than utter a threat; the evidence must show that the threatening message was conveyed to someone—either to the object of the threat or to a third party. An uncommunicated threat, by definition, cannot threaten. A fortiori, a person making threats does not commit a crime until the threat is heard by one other than the speaker.
 

 Our several cases which construe § 22-507 recognize this principle. In
 
 Campbell v. United States,
 
 450 A.2d 428 (D.C.1982), we enumerated the statutory elements. To establish a prima facie case, the government must prove, first, that the defendant uttered words
 
 to another,
 
 as well as that these words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer,
 
 [5]
 
 and that the defendant intended to utter these words as a threat.
 
 Id.
 
 at 431 n. 5 (emphasis added) (citing
 
 Gurley v. United States, supra,
 
 and Criminal Jury Instructions for the District of Columbia, No. 4.17 (3d ed. 1978)).
 
 [6]
 

 In
 
 Gurley v. United States, supra,
 
 a case which appellee asserts in support of her construction of the statute, we held that to successfully prosecute under § 22-507, the government need not prove that the threatening words were conveyed directly to the potential victim; proof that the words were communicated to a third party sufficed. Although we accompanied our affirmance of appellant Gurley’s conviction with the statement that “[a]ll the statute proscribes is a threat to do bodily harm,”
 
 id.,
 
 308 A.2d at 787, our holding rested solidly upon the premise that the words were heard by someone. Without communication of the threatening language, appellant Gurley’s
 
 *43
 
 threat would have remained inchoate — unchangeable under § 22-507.
 
 Accord State v. Lizotte, supra
 
 note 5, 256 A.2d at 440-42 (approving a jury instruction for the crime of making threats which stated in part, “An oral threat must have been made to or in the hearing of some person.... ”).
 
 [7]
 

 We conclude that, in the context of our threats statute, both the utterance and the communication of the threatening language are integral components of the offense of making threats to do bodily harm. Once uttered, the words must be communicated to complete the offense. Proof that either component occurred within the District establishes a basis for prosecution in the Superior Court. Accordingly, we hold that, if a threat is heard by someone within the District of Columbia, the speaker threatens with the proscriptive ambit of § 22-507 — regardless of where she utters the threatening words. A fortiori, the Superior Court properly will entertain jurisdiction over an ensuing prosecution.
 

 At trial, the complainant’s uncontro-verted testimony identified appellee as the caller. She described the threatening content of the telephone calls and the fear in her which they instilled. In addition, complainant testified that she received the calls at her Southeast Washington, D.C., home.
 
 [8]
 

 This testimony sufficiently established the jurisdiction of the trial court.
 

 Reversed and remanded for reinstatement of the jury’s verdict of guilty.
 

 [1]
 

 . Complainant and appellee first came to know each other in 1973, when complainant hired appellee for a secretarial position. They became close friends. In 1978, complainant abruptly fired appellee. Shortly thereafter, appel-lee commenced a pattern of increasingly harassing telephone calls, ultimately placing the calls at issue here.
 

 [2]
 

 . That is to say, a threat uttered to an empty room threatens no one. The crime of making threats remains inchoate until someone, other than the speaker, hears the threat.
 

 We find inapposite the government’s alternate jurisdictional theory of the “objective territorial principle.”
 
 See Strassheim v. Daily,
 
 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911). Moreover, in light of our conclusion,
 
 see
 
 discussion
 
 infra,
 
 we reject the government’s suggestion that we rely on language from
 
 Adair v. United States, supra,
 
 relating to a presumption of jurisdiction.
 
 See id.,
 
 391 A.2d at 290.
 

 [4]
 

 .
 
 Accord State v. Schweppe,
 
 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975) (“a speaker cannot intentionally commit the crime of terrorizing another if he utters the threat in circumstances where he does not know, or have reason to know, that it will be communicated to the victim”).
 

 [5]
 

 . Appellee argues that the objective standard set forth in this second element makes it irrelevant that the object of the threat hears it and supports her claim that merely uttering a threat completes the crime. We read the case law to the contrary. The purpose for phrasing this element as an objective standard is to render irrelevant “whether or to what degree the threat engenders fear or intimidation in the intended victim or whether the appellant had or had not the intention to carry out the threat later.”
 
 Postell v. United States, supra
 
 note 3, 282 A2d at 553. “Some men are braver than others and less intimidated.”
 
 State
 
 v.
 
 Lizotte,
 
 256 A.2d 439, 442 (Me.1969) (cited with approval in
 
 Postell v. United States,
 
 supra).
 

 [6]
 

 .The standardized jury instruction for this crime properly reflects the principle that to come within the statute a threat must be communicated. It states in part:
 

 Threats to do bodily harm are words
 
 spoken by one person to another
 
 which convey a menace or fear of bodily harm.
 

 The essential elements of the offense of threats to do bodily harm, each of which the government must prove beyond a reasonable doubt, are:
 

 1. That the defendant
 
 uttered words to another person;
 

 2. That the words used by the defendant were of such a nature as to convey a menace or fear of serious bodily harm or injury to the ordinary hearer; and
 

 3. That the defendant had the intent to utter the words which constituted making a threat to do bodily harm....
 

 Criminal Jury Instructions,
 
 supra
 
 at No. 4.17 (emphasis added).
 

 [3]
 

 . Our attempt to interpret the statutory language is hampered by the fact that the crime of making threats to do bodily harm was unknown to the common law.
 
 Postell v. United States,
 
 282 A.2d 551, 553 (D.C.1971). Moreover, the legislative history casts no light on congressional intent in enacting the statute.
 

 [7]
 

 . Likewise, in
 
 Smith v. United States,
 
 295 A.2d 60 (D.C.1972), where we interpreted § 22-507 to mean that “a single threat directed to more than one person constitutes but a single unit of prosecution,” the evidence clearly established that appellant’s single threat to two people, in fact, had been communicated.
 
 Id.
 
 at 61.
 

 [8]
 

 . The jury could have, and apparently did, infer appellee’s intent to utter the threatening words from circumstantial evidence,
 
 e.g.,
 
 the precipitously stormy breakup of appellee and complainant’s friendship and the incessant series of phone calls to complainant from appellee, the substance of which, complainant testified, grew increasingly harassing and hostile.