Trung Van DANG, Appellant,

v.

UNITED STATES, Appellee

and

Phuoc Huv Nguyen, Appellant,

v.

United States, Appellee.

Nos. 97–CF–42, 97–CF–768.

District of Columbia Court of Appeals.

Argued Oct. 13, 1999.

Decided Dec. 9, 1999.

---

Lisa Alexis Jones, Washington, DC, appointed by this court, for appellant Nguyen.

Michael L. Spekter, Washington, DC, appointed by this court, for appellant Dang.

Amul Thapar, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth H. Danello, and Jonathan N. Rosen, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellants were convicted by a jury of two counts of first-degree burglary while armed,[1] one count of armed robbery,[2] and one count of possession of a firearm during the commission of a crime of violence.[3] A third co-defendant, Phi Nguyen, appellant Nguyen's brother, named in the indictment and tried with appellants, was acquitted of all charges. On appeal, appellants contend that (1) the trial court erred in admitting photographic arrays that were unduly suggestive, and (2) the evidence was insufficient to support their convictions.[4] Additionally, appellant Dang contends the trial judge abused his discretion with regard to rulings made when questions arose as to the role of official interpreters during the course of the proceedings. We affirm.

## I.

According to evidence presented by the government at trial, Ut Ho was celebrating the second day of the three-day Vietnam-

---

1. D.C.Code §§ 22–1801(a), –3202 (1981 & 1996 Repl.).

2. D.C.Code §§ 22–2901, –3202 (1981 & 1996 Repl.).

3. D.C.Code §§ 22–3204(b) (1981 & 1996 Repl.).

4. The trial court granted appellants' joint motion for judgment of acquittal on three counts of armed robbery at the conclusion of the government's case. Additionally, the jury returned not-guilty verdicts on one count of conspiracy to rob and two counts of armed robbery; they were deadlocked on one count of threatening to injure a person, against appellant Nguyen, and that count was subsequently dismissed.

ese New Year holiday with her family and invited guests at her apartment. After dinner, Ut Ho, her granddaughter, and her friend, Hoa Nguyen, went to sleep while other guests and family members gambled. There was money and jewelry on the floor. Around midnight, an uninvited tall man entered the closed but unlocked door of the apartment and asked for Hoa Nguyen. When told that she was asleep, he brandished a gun, and four other males entered the apartment. Three of the four males were identified at trial as appellants and Phi Nguyen, their co-defendant at trial; the fourth was identified as a "short man." The men unplugged the telephone and turned up the volume on the stereo equipment while Dang blocked the door. Sometime thereafter, the tall man and appellant Nguyen each pointed a gun at Mrs. Nguyen while the short man brandished a knife at her stomach; appellant Dang also guarded her at some point. Her jewelry was taken from her. While appellant Nguyen continued to point the gun at Mrs. Nguyen's head, her husband Binh Nguyen moved toward her, but was hit above the eye with the butt of a gun by the tall man and then kicked from behind by appellant Dang. Later the tall man approached a closet containing money and jewelry, which Phuong Ho, Ut Ho's daughter, blocked. After an exchange of words, Ut Ho moved to assist Phuong Ho and was pushed to the ground by the tall man. Appellant Nguyen said, "If you don't shoot her, I will shoot her." At that point, he pointed a gun at Phuong Ho's stomach when her boyfriend pushed him away. The five men ran out of the apartment after taking all the money from the floor.

Phuong Ho called the police from a neighbor's telephone. When the detectives arrived, Mrs. Nguyen identified both appellants and Phi Nguyen by name. On two subsequent dates, both Mr. and Mrs. Nguyen individually identified pictures of both appellants from a photographic array.

Two witnesses testified for the defense that both appellants were at a nearby coffee shop until 1:00 a.m. or later on all three days of the Vietnamese New Year.

## II.

■ Both appellants challenge some of the identification procedures in this case. Appellant Dang asserts that his photograph was unfairly included in each of the arrays shown consecutively to different witnesses. In addition, Dang claims the viewings were defective because there were no other photographs of people, like him, of African–American and Asian descent, included in the arrays.

■ Appellant Nguyen argues that a photograph of his brother, Phi Nguyen, a person of similar appearance, was improperly included in the array of photographs which also included his photograph.

■ It is, of course, a familiar concept that the admissibility of evidence of eye-witness identification is to be evaluated by assessing whether the procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In this instance the trial judge reviewed the composition of the photographic arrays, as well as the circumstances surrounding the presentation of the photographs to the witnesses. Especially in light of the prior acquaintance of the witnesses and the defendants, the trial judge found nothing irregular that rose to the level of undue suggestivity. We concur. *See Greenwood v. United States*, 659 A.2d 825, 827–28 (D.C.1995); *Green v. United States*, 580 A.2d 1325, 1326–27 (D.C.1990).

■ Even assuming error on this point for the sake of analysis, the record is strong regarding the reliability of the identification testimony presented to the jury. Both Mr. and Mrs. Nguyen, the complaining witnesses, had known both appellants for several years based on contact with them in the neighborhood. In addition, Mrs. Nguyen had cut both appellants' hair at her salon. Lastly, at the time of the crime both witnesses were in close contact with the robbers for an extended time, under adequate lighting, with a full opportunity to observe them. Thus aside from

the identification procedures employed here, these witnesses had an independent basis showing a reliability warranting the admission of their testimony. *See Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Additionally, we reiterate that upon initial encounter with the police, both complainants identified their assailants by name. *See Green v. United States, supra*, 580 A.2d at 1327. We conclude there was no error in allowing the witnesses to testify with respect to the identification of both appellants.

### III.

Both appellants challenge the sufficiency of the evidence. Appellant Nguyen asserts this claim generally but mainly relies upon an attack on the identification evidence. Appellant Dang contends the evidence was insufficient as to the weapons offense because there was no evidence that he had actual possession of a firearm during the course of the robberies.

■ The question of sufficiency is a recurrent one. A reviewing court, in evaluating the sufficiency of the evidence, does not attempt to weigh the evidence as factfinders. Rather, viewing the evidence in the light most favorable to the prosecution, we must determine whether a reasonable juror could find guilt beyond a reasonable doubt. *Gayden v. United States*, 584 A.2d 578, 580 (D.C.), *cert. denied*, 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991). We conclude, generally, that the government has met this standard. With regard to the identification issue, it follows from our earlier discussion that the evidence was adequate to permit a reasonable juror to rely upon it, beyond a reasonable doubt, with respect to the identity of the perpetrators of the charged offenses.

■ Appellant Dang's sufficiency challenge is different. He asserts that, although other perpetrators at the scene may have been armed, there was no evidence that he carried a gun or any other

weapon, and thus the evidence was deficient.

Our statute, D.C.Code § 22–3204(b), in essence, provides that one may not possess a weapon while committing a dangerous crime. The government's theory of the case against Dang was that he was guilty of the offense as an aider and abettor. Indeed the jury, during deliberations, requested a clarifying instruction on this point. The trial judge concluded that, if the requirements of aiding and abetting were satisfied, the concept could properly be applied to this offense.

■ It is settled that one may be convicted of an offense without committing each of the acts which comprise the offense. It is necessary, however, that in addition to being present, the person must knowingly act in furtherance of the common purpose in an effort to make the venture succeed. *West v. United States*, 499 A.2d 860, 865 (D.C.1985). Thus, a defendant may be charged as an aider or abettor if the evidence shows that someone committed the offense charged and the defendant knowingly aided in its commission in some way. *Gillis v. United States*, 586 A.2d 726, 728 (D.C.1991). This holds true where the offense charged is a weapons offense. *Brown v. United States*, 683 A.2d 118, 128 n. 12 (D.C.1996) (possession of a firearm during the commission of a crime of violence); *Ingram v. United States*, 592 A.2d 992 (D.C.1991) ("armed" element of armed robbery); *Hordge v. United States*, 545 A.2d 1249 (D.C.1988) (same). Although the evidence did not show that appellant Dang actually possessed a gun, it did show that he entered and exited the apartment with his co-defendants; while in the apartment he worked in concert with them by, among other things, blocking the door, guarding Mrs. Nguyen, and pointing a knife at Phuong Ho. From these facts a reasonable juror could find that the appellant aided and abetted in his co-defendants' possession of their guns.[5]

---

**5.** Since the elements of a conspiracy charge are not identical to those for aiding and abet-

ting, appellant's acquittal of conspiracy has no effect on this determination. Indeed, jury

## IV.

At the start of the suppression hearing conducted by the court there were two interpreters in court, and the court appointed Ms. Wen, who had translated for the government witnesses at the grand jury in the instant case, to interpret for all three co-defendants. Counsel for appellant Nguyen and counsel for Phi Nguyen objected on conflict of interest grounds. During a recess in the hearing, the court stated that Ms. Landeau of the Office of Court Interpreter Services had indicated that she could not provide another Vietnamese interpreter but indicated that the interpreters were bound by oath and the Interpreter's Code of Ethics to interpret impartially. Thereafter, counsel for appellant Dang joined the objection on conflict of interest, stating that Ms. Wen was employed by the United States at the State Department. He also demanded an individual interpreter for his client so they could freely communicate with each other during trial. After some discussion of the interpreter's status at the State Department, Ms. Landeau noted that the second interpreter could be used by defense counsel to communicate with their clients and that any such communication would be protected by the attorney-client privilege. She also noted that where there are multiple defendants, "simultaneous equipment" for translation is used. It appears from the record that such equipment was used. The court then ruled that it would continue with Ms. Wen as the interpreter for all of the co-defendants, based on the interpreter's oath and the fact that her job is only to translate words. At this point, appellant Dang's counsel acquiesced in the ruling but continued to press for an individual interpreter, arguing that "my client's right to speak to me and my right to speak to

him is chilled by the fact that we have to wait for a break in the proceedings . . . ."

On the second day of trial, appellant Dang's counsel complained that the interpreters were not making a literal interpretation. The court admonished the interpreter to translate all the words that were spoken, and instructed the interpreter to do so.

## A.

■ Appellant argues that an impermissible conflict of interest was created when the trial court proceeded, over his objection, with the use of an interpreter who had translated during the grand jury proceedings for this case.[6]

The District of Columbia Interpreter Act provides for the appointment of a qualified interpreter whenever a communication-impaired person is a party or witness to a criminal court proceeding, to interpret the proceedings for that person and to interpret their testimony. D.C.Code § 31–2702(a) (1998 Repl.). It further provides for the appointment of an interpreter to assist in communication between a communication-impaired, indigent defendant and appointed counsel. D.C.Code § 31–2702(b) (1998 Repl.). Two purposes are evident on the face of the statute. One is assistance of the communication-impaired person, in understanding the proceedings and communicating with counsel. The other is assistance of the court, in interpreting the testimony of the communication-impaired person. As was fully developed by the trial court, interpreters are bound by oath and by the Interpreter's Code of Ethics to interpret accurately, completely, and impartially. Their function is a ministerial one, and they are not advocates for any party or position. Accordingly, it is

inconsistency is not a basis for reversal. *Ransom v. United States,* 630 A.2d 170 (D.C.1993).

6. Appellant also objected at trial to the use of interpreters who were employees of the United States Department of State. Appellant waived that argument at trial when his coun-

sel stated, "If [the government] says it's true they are just contracted through the State Department, I have no problems with conflicts of interest." *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

unlikely that a conflict would manifest itself in the ordinary case.

Turning to the facts of this case, there is no record of bias. In the absence of any showing of bias, we cannot conclude the trial court abused its discretion in allowing the trial to proceed in these circumstances. *See Ko v. United States,* 722 A.2d 830, 836 (D.C.1998) (en banc).

**B.**

■ Appellant argues that the trial judge erred in denying his request for a separate interpreter. He does not cite any legal basis for a right to a separate interpreter, and this court has not found any. Where counsel has been appointed to represent an indigent defendant, the court must appoint an interpreter "to assist in communication with counsel in all phases of the preparation and presentation of the case." D.C.Code § 31–2702(b) (1998 Repl.). The federal analogue to this law also includes "communication with counsel" as an object of interpretation, 28 U.S.C. § 1827(d)(1) (1994). Federal courts interpreting this provision have concluded that there is no requirement that every defendant in a multi-defendant case be provided with his own personal interpreter. *See, e.g., United States v. Sanchez,* 928 F.2d 1450, 1455 (6th Cir.1991); *United States v. Bennett,* 848 F.2d 1134 (11th Cir.1988); *United States v. Lim,* 794 F.2d 469 (9th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986). Given the identity of purpose between the two laws and the absence of any authority mandating the use of individual interpreters for co-defendants, the federal courts' outlook is persuasive to us.

■ When using a single interpreter during a multi-defendant action, the underlying purposes of the interpretation law must be met. *Sanchez, supra,* 928 F.2d at 1455. Specifically, each defendant must be provided the time and the ability to confer effectively with counsel throughout the proceedings. *Id.* Further, the court must ensure that each defendant is able to understand the proceedings. *Id.* As long as the purposes of the law have been met, the appropriate use of interpreters in the courtroom is a matter within the sound discretion of the trial court. *Id.*

Here, appellant's concerns related to his ability to communicate with his counsel. The three co-defendants shared the use of the second interpreter to communicate with their counsel. Since the defendants had a mutually consistent alibi, there was no direct conflict in their sharing an interpreter. Such an arrangement was upheld in *Bennett, supra,* 848 F.2d at 1140–41. Although the federal courts' analysis is enlightened by a neighboring section of the federal law that authorizes the use of simultaneous interpretation in multi-defendant cases, *see* 28 U.S.C. § 1828(a); *Sanchez, supra,* 928 F.2d at 1454–55, that reliance is not dispositive here since simultaneous interpretation does not affect the defendants' ability to communicate with their counsel.

**C.**

■ Finally, appellant argues that the trial court erred in failing to investigate the interpreter's competence where she synthesized the testimony of a witness. This claim is reviewed under the "abuse of discretion" standard, *see Gonzalez v. United States,* 697 A.2d 819, 825 (D.C.1997). Once appellant's trial counsel objected to the interpreter's synthesis of testimony, the trial judge admonished the interpreter to translate all of the witness' expressions, and no further complaints of synthesis were made. It appears that the trial court's response to the objection was appropriate and effective, and this court finds no abuse of discretion.

We conclude that as a matter of law an accused is not entitled to an individual interpreter, and in the circumstances of this case the trial judge did not abuse his discretion in his responses to counsel's objections regarding the interpretation procedures.

Accordingly, the convictions hereby are affirmed.

*So ordered.*