**Harold G. CLARK, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 97–CM–1310.**

District of Columbia Court of Appeals.

Submitted May 11, 2000.

Decided June 22, 2000.

Aleta J. Clayton, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher and Alexandre Rene, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN and RUIZ, Associate Judges, and KERN, Senior Judge.

STEADMAN, Associate Judge:

Appellant was convicted of threats to do bodily harm, D.C.Code § 22–507 (1996), based on statements he made to a police officer. He argues on appeal that the statements should have been suppressed because they were made during the course of an unlawful arrest. Alternatively, he contends that there was insufficient evidence to support the conviction. We affirm.

## I. Facts

The complainant, Officer Gwendolyn Mapp, was the sole witness in the trial court. According to her testimony,[1]

---

1. In reviewing both the suppression ruling and the jury verdict, we view the evidence in the light most favorable to the prevailing party. See In re T.L.L., 729 A.2d 334, 339 (D.C. 1999) (suppression ruling); Dang v. United States, 741 A.2d 1039, 1043 (D.C.1999) (jury verdict). For purposes of the suppression ruling, we may consider "both the evidence

Officer Mapp was patrolling the grounds of a public housing complex on March 21, 1997, when she saw appellant and several other men involved in what she believed to be the beginnings of a drug transaction. The group broke up when they noticed her. Shortly thereafter, Officer Mapp saw appellant crossing the street from the complex. She approached him to ask "why he was on the property and what was going on," since only residents and visitors who had signed in at the guard house were supposed to be on the property. Three other officers eventually joined her.

Appellant and Officer Mapp spoke for about four or five minutes at this location. When appellant admitted that he did not live in the complex, the officers decided to take him to the main office to issue a "barring notice" to keep him off the property in the future. This involved taking a photograph and giving him a written notice. They explained this to appellant, another officer handcuffed him, and all four officers escorted him toward the office. Although appellant had been "agitated" and "uncooperative" at first, he "calmed down" when he was told that he was going to be barred from the property and stated that he needed to be able to come on the grounds to take care of his grandmother who lived in the complex's senior citizen building. Appellant had not been in the "proper area" to go to that building when Officer Mapp saw him on the property, but she planned to check this information at the office.

 Before reaching the office, however, appellant made the following statement to Officer Mapp, who was standing directly beside him: "You won't work here again, wait until I tell the boys, they will take care of you." When Officer Mapp "stopped dead in [her] tracks" and looked up at appellant (who was taller than she was), he continued, "You think I'm playing, just watch and see." Surprised, Officer Mapp asked, "What did you say?" [2] to which appellant replied, "You won't work anywhere after I tell the boys." Officer Mapp took these statements to mean that appellant would arrange for boys in the neighborhood to do something to her so that she would be physically incapacitated from working. The statements were made in a "serious[ ]" and "threatening" tone, appellant looked Officer Mapp "straight in [the] eye," and she did not think he was joking. She immediately placed appellant under arrest.

## II. Suppression Motion

Appellant first contends that the trial court should have suppressed his threatening statements because he was unlawfully arrested at the time he made them. Although Officer Mapp did not consider appellant under arrest, the trial court concluded that appellant was objectively under arrest and that such arrest was unlawful because it was not based on probable cause. Since this issue is not critical to our disposition, we assume *arguendo* that appellant was unlawfully arrested when he made the statements. We are thus faced with the question, apparently one of first impression in this jurisdiction, whether evidence of a separate and distinct crime must be suppressed under the "fruit of the poisonous tree" doctrine if the crime was

offered at the suppression hearing and the undisputed trial testimony." *See Hill v. United States*, 664 A.2d 347, 350 n. 4 (D.C.1995), *cert. denied*, 516 U.S. 1065, 116 S.Ct. 749, 133 L.Ed.2d 697 (1996).

**2.** The trial court expressly found that this statement "was not an attempt by [Officer Mapp] to interrogate Mr. Clark but was actually an expression of surprise." We defer to this finding of fact, but review *de novo* the trial court's legal conclusion that the state-

ment therefore did not constitute custodial interrogation within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See United States v. Brown*, 737 A.2d 1016, 1018 (D.C.1999). Since the question was more "asked reflexively in a context of wonderment" than "intended to elicit inculpatory information," *Smith v. United States*, 586 A.2d 684, 685 (D.C.1991), we conclude that it did not constitute custodial interrogation.

committed while in unlawful police custody.

■ As a general rule, evidence discovered pursuant to an illegal search or seizure must be suppressed as "fruit of the poisonous tree," whether the evidence is physical or testimonial in nature. *See Patton v. United States,* 633 A.2d 800, 816 (D.C.1993). However, if "an intervening event or other attenuating circumstance purges the taint of the initial illegality, the evidence need not be suppressed." *Id.* According to the United States Supreme Court, the proper test is not simply whether the evidence would not have been obtained "but for" the initial illegal police action, but rather "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Many other federal and state appellate courts have already considered whether commission of a separate and distinct crime constitutes the kind of independent act that purges the primary taint of illegal custody. These courts have almost uniformly held that it does. The leading case is *United States v. Bailey,* 691 F.2d 1009 (11th Cir.1982), *cert. denied,* 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983).[3] Federal agents approached Bailey and another man in an airport because they fit the profile for drug couriers. *Id.* at 1011. The two men initially agreed to go to the police station for a drug search, but Bailey suddenly dropped his luggage and fled. *Id.* at 1012. As he tried to climb over a gate, one of the agents caught up with him, a struggle ensued, and Bailey was ultimately arrested. *Id.* Assuming *arguendo*

that the officers' initial actions constituted an unlawful arrest, the Eleventh Circuit held that the "second" arrest was nonetheless valid and that any evidence subsequently acquired was therefore admissible because:

> [N]otwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime.... Where the defendant's response is itself a new, distinct crime, there are strong policy reasons for permitting the police to arrest him [or her] for that crime. A contrary rule would virtually immunize a defendant from prosecution for all crimes he [or she] might commit that have a sufficient causal connection to the police misconduct.... Unlike the situation where in response to the unlawful police action the defendant merely reveals a crime that *already* has been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct.

*Bailey, supra,* 691 F.2d at 1016–17. In reaching its conclusion, the court emphasized that the critical factor was that Bailey's response to the police seizure, *i.e.* flight and resisting arrest, was itself unlawful. *Id.* at 1018.

The vast majority of appellate courts have followed *Bailey,* refusing to suppress either evidence of the distinct crime itself

---

**3.** *Bailey* was not the first case to touch upon the issue. *See, e.g., People v. Garcia,* 81 Mich. App. 260, 265 N.W.2d 115, 121 n. 5 (1978) ("the fruit-of-the-poisonous tree doctrine cannot be used to condone death threats leveled against a police officer"); *State v. Miller,* 282

N.C. 633, 194 S.E.2d 353, 358 (1973) ("Although wrongfully on the premises, officers do not thereby become unprotected legal targets."). However, it appears to have been the first to consider it in significant depth, and is the case most frequently cited by other courts.

or evidence seized incident to arrest for the distinct crime. *See, e.g., United States v. Sprinkle,* 106 F.3d 613 (4th Cir.1997) (shooting at police officer); *United States v. Dawdy,* 46 F.3d 1427, 1431 (8th Cir.) (struggle with police officer), *cert. denied,* 516 U.S. 872, 116 S.Ct. 195, 133 L.Ed.2d 130 (1995); *United States v. Pryor,* 32 F.3d 1192, 1196 (7th Cir.1994) (misrepresentation of identity to police officer); *United States v. Waupekenay,* 973 F.2d 1533 (10th Cir.1992) (pointing rifle at police officer); *United States v. Garcia–Jordan,* 860 F.2d 159 (5th Cir.1988) (misrepresentation of citizenship status to border patrol official); *United States v. Mitchell,* 812 F.2d 1250 (9th Cir.1987) (threats against United States President uttered to police officers); *United States v. King,* 724 F.2d 253 (1st Cir.1984) (shooting at police officer); *United States v. Marine,* 51 M.J. 425 (C.A.A.F.1999) (disrespectful statements to military guard officer); *Nicholson v. State,* 707 A.2d 766 (Del.1998) (disorderly conduct, resisting arrest, and criminal mischief); *State v. Nelson,* 336 S.C. 186, 519 S.E.2d 786 (1999) (traffic offenses); *State v. Miskimins,* 435 N.W.2d 217 (S.D.1989) (pointing shotgun at officer and threatening to kill him); *Woodson v. Commonwealth,* 245 Va. 401, 429 S.E.2d 27 (1993) (pulling gun and struggling with police officer).

■ While many of such cases involved physical use of force against police officers, others involved unlawful verbal responses such as threats or false statements. In any event, the critical issue is not the gravity of the defendant's response to unlawful police action, but the legality of it. We hold today that, at least absent

unforeseen exceptional circumstances,[4] the commission of a separate and distinct crime while in unlawful police custody is the type of intervening act which purges the primary taint. Since appellant's response in the instant case created probable cause to arrest him for threats under D.C.Code § 22–507, there is no constitutional basis to suppress the evidence.[5]

## III. Sufficiency of Evidence

■ Appellant also contends that there was insufficient evidence to convict him. According equal weight to circumstantial evidence and direct evidence, *see Jones v. United States,* 716 A.2d 160, 162 (D.C. 1998), "it is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Nixon v. United States,* 730 A.2d 145, 148 (D.C.), *cert. denied,* —— U.S. ——, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999). *See also supra* note 1.

■ The elements of threats are (1) that the defendant uttered words to another person; (2) that the words were of such a nature as to convey fear of serious bodily harm to the "ordinary hearer"; and (3) that appellant intended to utter the words as a threat. *United States v. Baish,* 460 A.2d 38, 42 (D.C.1983). Appellant basically contends that his references to "the boys" and Officer Mapp's inability to work in the future could reasonably be construed as referring to male police officers and employment consequences, rather than appellant's friends and physical incapacitation.

4. The trial court specifically found that appellant's statements were voluntary and spontaneous in nature.

5. There may also have been probable cause to arrest appellant for "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing] with" a police officer in violation of D.C.Code § 22–505. *See In re C.L.D.,* 739 A.2d 353, 357 n. 6 (D.C.1999) (indicating that criminal threats against a police officer "could form the basis of an offense under

§ 22–505"). We note that today's decision allows D.C.Code § 22–505 to retain its full application. That statute provides in part that "[i]t is neither justifiable nor excusable cause for a person to use force to resist an arrest ... whether or not such arrest is lawful." This provision would be effectively meaningless if the evidence of an arrestee's illegal use of force had to be suppressed if the arrest was unlawful.

Words cannot always be read in the abstract and often acquire significant meaning from context, facial expression, tone, stress, posture, inflection, and like manifestations of the speaker and the factual circumstances of their delivery.[6] *See State v. Howe,* 247 N.W.2d 647, 654 (N.D.1976) ("No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. A threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited.") (citation omitted). Whether a particular statement constitutes a threat is a question of fact for the jury. *See United States v. Fulmer,* 108 F.3d 1486, 1492 (1st Cir.1997) ("Whether a given [statement] constitutes a threat is an issue of fact for the trial jury. The use of ambiguous language does not preclude a statement from being a threat. While the statement on its face may be susceptible to more than one interpretation, some factors ... such as the tone of the defendant's voice or the credibility of the government's and [defendant's] witnesses, may legitimately lead a rational jury to find that this statement was a threat"; citing cases) (internal quotation marks and citations omitted); *United States v. Malik,* 16 F.3d 45, 49 (2nd Cir.), *cert. denied,* 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994); *United States v. Schneider,* 910 F.2d 1569, 1570 (7th Cir.1990).

In the instant case, given the underlying situation, appellant's choice of words, his tone, his manner, and Officer Mapp's immediate interpretation, a reasonable jury could conclude that the statements made would "convey fear of serious bodily harm to the ordinary hearer," *Baish, supra,* 460 A.2d at 42, and that such was appellant's intent. *See United States v. Maisonet,* 484 F.2d 1356, 1358 (4th Cir. 1973) (affirming conviction for threatening judge where appellant made ambiguous statement which he claimed meant he would seek the judge's removal from office; "Whether a [statement] that is susceptible of more than one meaning—one of which is a threat of physical injury—constitutes a threat must be determined in the light of the context in which it was [made]"),[7] *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974); *Pendergast v. State,* 99 Md.App. 141, 636 A.2d 18, 22 (1994) (affirming conviction for threatening judges where arguably ambiguous statements constituted a threat under the circumstances). "Neither this court nor the trial court may usurp the jury's prerogative of determining credibility, weighing the evidence, and drawing reasonable inferences," and "the government's evidence may be sufficient even if it does not exclude every reasonable hypothesis other than guilt." *Parker v. United States,* 601 A.2d 45, 51 (D.C.1991) (internal quotation marks and citation omitted). The judgment of the trial court is

*Affirmed.*

---

6. We deal here with a statement arguably ambiguous on its face. We leave for another day whether words which in their plain and surface meaning cannot be construed as threatening bodily harm may nonetheless support a conviction for threats under D.C.Code § 22–507 on the basis of the cited interpretive considerations.

7. *Maisonet, supra,* involved a letter from an inmate to the judge who sentenced him stating, "I may have to do all my ten (10) years, but if ever get out of here [prison] and nothing happen to me while I am in here, you will never be able to be prejudice and racist against another Puerto Rican like me." 484 F.2d at 1357. Regarding whether the language of the letter threatened physical harm and whether Maisonet intended it to do so, the court considered relevant the fact that the letter "said nothing ... about having the judge investigated or about seeking his removal." *Id.* at 1358. In this case, as Officer Mapp pointed out on cross-examination, appellant "never said he would tell [Officer Mapp's] supervisors, he never said he would have someone check [her] job status."