*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CM-523

LEE CARRELL, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(DVM-134-12)

(Hon. Heidi Pasichow, Trial Judge)

(Submitted September 26, 2013                    Decided November 21, 2013)

*Fletcher P. Thompson* was on the brief for appellant.

*Ronald C. Machen, Jr.*, United States Attorney and *Elizabeth Trosman* and *Kathryn L. Rakoczy*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON, *Associate Judge*, and NEWMAN and SCHWELB, *Senior Judges*.

Opinion for the court by *Senior Judge* NEWMAN.

Dissenting opinion by *Senior Judge* SCHWELB at page 20.

NEWMAN, *Senior Judge*:  Carrell was convicted after a bench trial of simple

assault[1] and attempted threats to do bodily harm.[2]  He appeals the portion of the judgment relating to attempted threats to do bodily harm; he does not challenge his assault conviction.[3]  He urges us to hold that the evidence was insufficient to support a finding that he intended to threaten the victim, Ringenburg, a finding that he contends the trial judge never made, although required to do so.  We affirm.

## I.

On January 10, 2012, the tumultuous two-year relationship between Carrell and his girlfriend, Ringenburg, began its eventful conclusion.  According to Ringenburg's testimony, which the trial judge credited in its entirety, Carrell came to the residence they shared that evening in an intoxicated condition; an argument ensued.  Carrell told Ringenburg that "I wish you would die" and that if she called any of her family or friends for help, he would kill them.  Ultimately, this

---

[1]  D.C. Code § 22-404 (2001).

[2]  D.C. Code §§ 22-407 (threats), 22-1803 (attempt) (2001).  The threats statute was amended in 2012 after the events here at issue, but the amendments have no substantive bearing on this case.  *See* Criminal Fine Proportionality Amendment Act of 2012, sec. 203 (b), § 22-407, 60 D.C. Reg. 2064 (2012).

[3]  We affirm this conviction without further discussion save as the extent to which the evidence of the assault relates to the attempted threats conviction.

encounter ceased and none of these events are the subject of the charges in this case.

The argument began anew the following morning. Carrell grabbed Ringenburg with both his hands around her throat, in a choking position, and pushed her against the bedroom window. While doing so, Carrell yelled at her "I could kill you right now, I could fucking kill you." Ringenburg testified that this caused her to fear for her life. After releasing her and after a further bout of verbal jousting, Carrell again grabbed Ringenburg and pushed her to the floor. He pinned her to the floor and placed a hand over her nose and mouth, so that Ringenburg could not speak and had difficulty breathing. Ringenburg felt like she was suffocating. She was able to get free and called 911.

Carrell testified. He denied pushing Ringenburg down to the floor, covering her mouth with his hands, or telling her, "I could kill you, I could fucking kill you." On cross-examination, he admitted during previous arguments with Ringenburg he had broken furniture, furnishings, fixtures, and memorabilia.

We now quote, in some detail, from the trial court's findings.

Okay. The Court has before her two counts in this case the Government's proceeded on. One is an assault. I'm reading from the instruction, attempt battery – the elements of which the Government would have to prove beyond a reasonable doubt that the Defendant with force or violence injured or attempted to injure the complaining witness.

Two: That he did so voluntarily, on purpose and not by mistake or accident.

Three: At the time he had the apparent ability to injure her. And, also, there appears to be a self defense claim the Government would have to prove beyond a reasonable doubt that he did not act in self defense.

In terms of the second count, which is threats to do bodily harm the Government would have to prove that Mr. Carrell spoke words or otherwise communicated to the complaining witness words [that] would cause a person reasonably to believe that he or she would be seriously harmed if the event occurred and that he intended to utter the words which constituted the threat.

Later, the court continued its findings and conclusions.

. . . I still . . . determined based upon . . . crediting the testimony of the complaining witness in the – in its entire[ty] – that Mr. Carrell did with force or violence when he did choke her with both hands, press her throat, when he did push her down onto the rug in the living room with force or violence injured or attempted to injure the complaining witness, that he did so voluntarily, on purpose, and not by mistake or accident.

And that at the time he had the apparent ability to injure her, I dealt with the issue and find that the Government has proven each of those elements beyond a reasonable doubt and is proven beyond a reasonable doubt that there was no self defense viable in this case.

I also have concluded based on the testimony that Mr. Carrell did utter words to Ms. Ringenburg in his anger, that the words I'm focused on are the words "I could kill you, I could kill you. I could fucking kill you right now." And in terms of that – that – those sets of words, taken in the context – because one has to ask what is a threat.

There are threats that are immediate. There are threats that are – that threaten, if you will, utter future harm or conditional harm but in my assessment of the case law here the Court of Appeals ha[s] noted that I'm not to look at those words [in] a vacuum, I'm to look at those words in terms of the circumstances surrounding the statements whether or not those words would cause a reasonable person to interpret them as a threat or not.

*Jenkins v. United States*, 902 A.2d 79, (D.C. 2006); and *Clark v. United States*, 755 A.2d 1026 [(D.C. 2000)]. From the context of facial expression, tone, infliction, posture, the way that the incident was described at the given time and how it was described quite expressly and vividly by the complaining witness in great detail at the time that she was being choked.

So I do find and conclude that the three elements of that offense have also been proven beyond a reasonable doubt.

Again, I just want to make the record clear that I am not finding the term – the comment that Mr. Carrell conceded he made – I wish you were dead. I'm not finding that to be the threat that is – is charged here. I don't think that was argued that way and that's not the threat – the words that I'm focusing on that constituted the Government's argument and constituted the threat in this case.

And so for the following reasons I find Mr. Carrell guilty beyond a reasonable doubt of both the simple assault and threats to do bodily harm.

## II.

There is no merit to Carrell's claim of evidentiary insufficiency. The evidence, as credited by the trial judge, is legally sufficient to establish each element of the offense beyond a reasonable doubt as those elements are enunciated in *Campbell v. United States*, 450 A.2d 428, 431 n.5 (D.C. 1982), and its progeny. Likewise if viewed under *United States v. Baish*, 460 A.2d 38, 42 (D.C. 1983), and its progeny, as Carrell contends we must, the evidence that the trial judge credited is legally sufficient to establish guilt beyond a reasonable doubt even if we must include as an element "that the defendant intended to utter the words as a threat." As the trial judge found, Carrell spoke the words "I could kill you, I could kill you, I could fucking kill you right now" while he was choking Ringenburg with both hands around her neck (i.e., the assault for which Carrell stands convicted and which he does not challenge here). Taken in the context in which they were used, including the prior interactions between the participants, these words were sufficient to enable a reasonable trier of fact to conclude beyond a reasonable doubt that Carrell was guilty of threatening Ringenburg with bodily harm, under either formulation of the "intent" requirement.

## III.

Carrell asserts that whether or not the evidence was sufficient to permit a finding that his words were uttered with the intent to threaten, his conviction must nevertheless be reversed because the trial judge did not make an explicit finding on this issue as he urges is required by such cases as *United States v. Baish*, *supra*, and its progeny, *e.g.*, *Clark v. United States*, 755 A.2d 1026, 1030 (D.C. 2000).  To address this contention, we must analyze our decisions construing the elements of the offense of threats to do bodily harm.[4]

---

[4] The District of Columbia has criminalized the offense of threats to do bodily harm as both a misdemeanor and as a felony.  The misdemeanor statute states:

> Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than 6 months, or both, and, in addition thereto, or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year.

D.C. Code § 22-407 (2001) *formerly* D.C. Code § 22-507 (1981).  The felony statute states:

> Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more $5,000 or imprisoned not more than 20 years, or both.

(continued…)

We first construed our threats statute in *Postell v. United States*, 282 A.2d 551 (D.C. 1971). There we noted that the

> crime of oral threats to do bodily harm was unknown to the common law and we know of no cases in this jurisdiction which have construed our statute or the meaning of the word "threats." Accordingly, we must first interpret [the statute] in light of the facts in this case and the applicable principles of law as we understand them.

*Id.* at 553. After reviewing the authorities, we concluded that "the gist of the crime is that the words used are of such a nature as to convey a menace or fear of bodily harm to the ordinary hearer." *Id.* (citing *State v. Schul-Theis*, 272 A.2d 554, 547 (N.J. Super. 1971)). We have reaffirmed on numerous occasions *Postell*'s construction of the threats statute as encompassing all communications that are objectively viewed as threats by the "ordinary hearer." *E.g.*, *Tolentino v. United States*, 636 A.2d 433, 435 (D.C. 1994); *Beard v. United States*, 535 A.2d 1373,

---

(…continued)

D.C. Code § 22-1810 (2001) *formerly* D.C. Code § 22-2307 (1981). The elements for both are the same. *In re S.W.*, 45 A.3d 151, 155 n.9 (2012) (citing *Baish*, *supra*, 460 A.2d at 41, and *United States v. Young*, 376 A.2d 809 (D.C. 1977)). Accordingly, in determining the elements of the offense of threating bodily harm, we review our precedent regardless of whether the felony or misdemeanor statute was charged.

1378 (D.C. 1988); *United States v. Smith*, 337 A.2d 499, 503 (D.C. 1975); *Gurley v. United States*, 308 A.2d 785, 787 (D.C. 1973).

Our next visit to this issue was in *Campbell v. United States*, 450 A.2d 428 (D.C. 1982). We held with respect to the elements of the offense:

> The essential elements of the offense of threats to do bodily harm are: that the defendant uttered words to another person; that the words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; that the defendant intended to utter the words which constituted the threat. *Gurley v. United States*, D.C.App., 308 A.2d 785 (1973); Criminal Jury Instruction for the District of Columbia, No. 4.17 (3d ed. 1978).

*Id.* at 431 n.5.

Thus our jurisprudence on threats to do bodily harm remained until we decided *United States v. Baish*, 460 A.2d 38 (D.C. 1983). There, after referring to WEBSTER'S THIRD INTERNATIONAL DICTIONARY (1966) and BLACK'S LAW DICTIONARY (1979) to define the term 'threat,' as a "communicated intent to inflict harm on any person or on property," *id.* at 42, we opined:

> Our several cases which construe § 22-507 recognize this principle. In *Campbell v. United States*, 450 A.2d 428 (D.C. 1982), we enumerated the statutory elements. To establish a prima facie case, the government must prove, first, that the defendant uttered words *to another*, as well as that these words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer, and that the defendant intended to utter these words as a threat. *Id.* at 431 n.5 (emphasis added) (citing *Gurley v. United States*, *supra*, and Criminal Jury Instructions for the District of Columbia, No. 4.17 (3d ed. 1978)).

*Id.*

Comparing this recitation of the elements of the offense with the recitation actually contained in *Campbell*, the authority on which *Baish* relies, it is apparent that *Baish* adds the language "and that the defendant intended to utter the words *as a threat*," a 'requirement' nowhere found in *Campbell*. *Compare id.* (". . . that the defendant intended to utter these words *as a threat*." (emphasis added)), *with Campbell*, *supra*, 450 A.2d at 431 n.5 (". . . that the defendant intended to utter the words which constituted the threat."). Noteworthy, the only cases cited by *Baish* on this issue were *Gurley* and *Campbell*. 460 A.2d at 42.

*Clark v. United States*, 755 A.2d 1026 (D.C. 2000), came next. Citing *Baish*, it also included this 'requirement.' *Id.* at 1030 (". . . that appellant intended

to utter the words as a threat."). The defendant in *Clark* contended, among other things, that the evidence was insufficient to establish the words he spoke to a police officer while under arrest constituted a threat to do bodily harm. In discussing this issue we said:

> Words cannot always be read in the abstract and often acquire significant meaning from context, facial expression, tone, stress, posture, inflection, and like manifestations of the speaker and the factual circumstances of their delivery. *See State v. Howe*, 247 N.W.2d 647, 654 (N.D. 1976) ("No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. A threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited.") (citation omitted). Whether a particular statement constitutes a threat is a question of fact for the jury. *See United States v. Fulmer*, 108 F.3d 1486, 1492 (1st Cir. 1997) ("Whether a given [statement] constitutes a threat is an issue of fact for the trial jury. The use of ambiguous language does not preclude a statement from being a threat. While the statement on its face may be susceptible to more than one interpretation, some factors . . . such as the tone of the defendant's voice or the credibility of the government's and [defendant's] witnesses, may legitimately lead a rational jury to find that this statement was a threat"; citing cases) (internal quotation marks and citations omitted); *United States v. Malik*, 16 F.3d 45, 49 (2nd Cir.), *cert. denied*, 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994); *United States v. Schneider*, 910F.2d 1569, 1570 (7th Cir. 1990).

*Id.* at 1031 (footnotes omitted).

We thus began to discuss the analysis a fact finder must undertake in seeking to determine whether the words that were spoken constituted a threat as distinguished from words that do not fall within the statutory prohibition. We elaborated more extensively on this in our most recent decision concerning threats to do bodily harm, *In re S.W.*, 45 A.3d 151 (D.C. 2012), an opinion about which we will say more anon.

After *Clark*, we decided *Evans v. United States*, 779 A.2d 891 (D.C. 2001). There we cited to *Campbell* for the elements of the offense, *id*. at 894 (". . . that the defendant intended to utter the words which constituted the threat."), and to *Baish* for another proposition—that a threat is consummated only when communicated, *id.* Our subsequent decision in *United States v. Joiner-Die*, 899 A.2d 762, 764 (D.C. 2006), cited to *Evans* and *Campbell* for the same elements and made no mention of *Baish* or its progeny. That decision, analyzing both the offenses of threats and intent-to-frighten assault, also states that intent-to-frighten assault, like threats to do bodily harm, requires only a general intent. *Id.* at 765.[5]

---

[5] The defendant in *Joiner-Die* was charged both with attempted threats to do bodily harm and intent to frighten assault; we held:

> To establish intent-to-frighten assault, the government must prove: (1) that the defendant committed a threatening act that reasonably would create

(continued…)

Next came *Jenkins v. United States*, 902 A.2d 79 (D.C. 2006). There, the defendant claimed that her words were innocuous, neutral, and could not be found to constitute a threat to do bodily harm. Quoting the passage from *Clark* on contextual analysis we have quoted *supra*, we cited *Baish* and *Clark* for the proposition that the words uttered must have been intended by the defendant to constitute a threat. *Id.* at 86 (". . . that appellant intended to utter the words as a threat.").

In a footnote, we noted that the government's brief argued that *Baish* and its progeny erred by including a 'requirement' that the defendant must have intended his words to be a threat, since that does not comport with prior decisions on this point such as *Campbell* and the cases on which we relied in *Campbell*. *Id.* at 87

---

(…continued)

> in another person a fear of immediate injury; (2) that, when he/she committed the act, the defendant had the apparent present ability to injure that person; and (3) that the defendant committed the act voluntarily, on purpose, and not by accident or mistake. D.C. Code § 22-404; *see also Frye v. United States*, [926 A.2d 1085, 1100 n.9 (D.C. 2005)].

899 A.2d at 765. *Accord Smith v. United States*, 593 A.2d 205, 206-07 (D.C. 1991) ("Therefore, we hold that the offense of assault, whether the 'attempted-battery' type or the 'intent-to-frighten' type, remains a general intent crime which may be proved by a showing that a defendant intended to do the acts which constitute the assault.").

n.11 (arguing the earlier articulation of the elements in *Campbell* controls (citing *Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C. 1999))). We found no need to resolve this contention at that time because, as we said, under either formulation a reasonable fact finder could find guilt beyond a reasonable doubt. *Id.*

Our most recent decision on this question is *In re S.W.*, 45 A.3d 151 (D.C. 2012). There, we were confronted with the issue of "whether words threatening on their face can be rendered benign by their context." *Id.* at 155-56. Recognizing the First Amendment implications of a threats statute, we said:

> Indeed, even when statements are threatening on their face, it is essential to consider and give full weight to context in order to ensure that the District's threats statutes are applied within constitutional parameters. As the Supreme Court held in *Watts v. United States*, and this court acknowledge in *Jenkins*, "[A] statute . . . which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." 394 U.S. at 707, 89 S.Ct. 1399. It is a cornerstone of our democracy that the First Amendment generally "bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). "True threats" are an exception to this rule and may be criminalized without violating the First Amendment. *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). But speech is only a "true threat" and therefore unprotected under the Constitution if an

> "ordinary reasonable recipient who is familiar with the[] context [of the statement] would interpret" it as a "serious expression of an intent to cause a present or future harm."
>
> . . . .
>
> In short, a determination of what a defendant actually said is just the beginning of a threats analysis. Even when words are threatening on their face, careful attention must be paid to the context in which those statements are made to determine if the words may be objectively perceived as threatening.

*Id.*, at 156, 157 (footnotes omitted). We held that singing a version of a song by the hip-hop rapper Lil' Wayne as a taunt to a neighbor, when taken in full context by an "ordinary hearer," was not sufficient to cause that hearer a reasonable belief that the threatened harm would take place. *Id.* at 160.

In this case, as it did in *Jenkins*, the United States notes the difference between the formulation in the *Campbell* line of cases and the *Baish* line of cases. The United States urges that these lines of cases are in conflict and that our decisions in *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971), and *Thomas*, *supra*, 731 A.2d at 420 n.6, compel us to follow the *Campbell* formulation rather than that of *Baish*. To address this contention, we must first determine whether there is in reality legal difference between the two formulations.

*Baish* is indeed in conflict with *Campbell* and the authorities on which *Campbell* relies. In *Campbell*, the focus is upon the "ordinary hearer" in the full context in which the words are spoken, an objective test. In *Baish*, the focus is both upon the "ordinary hearer," an objective test, and additionally upon whether "the defendant intended to utter the words as a threat," a subjective test of specific intent.

As the United States Court of Appeals for the Sixth Circuit has said in construing a federal 'threats' statute, 18 U.S.C. § 875 (c)[6]:

> The issue in the present case is whether the second element—"the communication containing a threat"— requires general intent or specific intent. If the statute contains a general intent requirement in regard to the threat element of the offense, the standard used to determine whether or not the communication contained an actual threat is an objective standard, i.e., would a reasonable person consider the statement to be a threat. If the statute contains a specific intent requirement, the standard is a subjective standard i.e., did the particular defendant have the subjective knowledge that his statement constituted a threat to injure and did he subjectively intend the statement to be a threat.

---

[6] "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875 (c) (2012).

*United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992). That court concluded the federal statute "does not require specific intent in regard to the threat element of the offense, but only general intent." *Id.* at 150. All other Circuit Courts, except the Ninth Circuit, that have examined the issue have held the same. *See, e.g.*, *United States v. Elonis*, No. 12-3798, 2013 WL 5273118, at *8 (3d Cir. Sept. 19, 2013); *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013); *United States v. White*, 670 F.3d 498, 508 (4th Cir. 2012); *United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005); *United States v. Morales*, 272 F.3d 284, 287-88 (5th Cir. 2001); *United States v. Francis*, 164 F.3d 120, 122 (2d Cir. 1999); *United States v. Whiffen*, 121 F.3d 18, 21 (1st Cir. 1997). *But see United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007).

The formulations in both the *Postell*, *Gurley*, *Campbell* line of cases and the *Baish* line of cases are seeking to ensure that only "true threats" within the constitutional limitations described in such cases as *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002), *Alexander v. United States*, 418 F.2d 1203, 1206 (D.C. Cir. 1969), and *In re S.W.*, *supra*, 45 A.3d at 156-57—a determination made after a full contextual analysis—are held to be within the statutory prohibition. Specific intent, unless admitted by the defendant, must be proved by the same circumstantial evidence used to prove general intent in a full

contextual analysis. *See Massey v. United States*, 320 A.2d 296, 299 (D.C. 1974). In our view, either formulation is adequate to this task; there is no jurisprudential justification that both general and specific intent apply to the same 'threats' offense.

Our en banc holding in *Holt v. United States*, 565 A.2d 970 (D.C. 1989), itself resolves the conflict between *Campbell* and *Baish*. *Holt* reaffirmed this court's holding in *United States v. Young*, 376 A.2d 809, 814 (1977), that both our felony and misdemeanor threats statutes have identical elements and that the intent required is "general intent." *See* 565 A.2d at 971, 972 ("The plain language of D.C.'s felony threats prohibition does not include any intent element."). This clearly vitiates the contrary prior holding in *Baish* if not indeed overruling it, albeit *sub silentio*. Additionally, our holding in *Thomas v. United States*, *supra*, 731 A.2d at 420 n.6, compels us to follow *Young*, *Gurley*, *Postell*, and *Campbell*, all of which preceded *Baish*, even if the issue had not been resolved by *Holt* alone.

We do so and reiterate the elements of the offense as we did in *Campbell*:

> that the defendant uttered the words to another person; that the words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; that

> the defendant intended to utter the words which constitute the threat.

*Campbell*, *supra*, 450 A.2d at 431 n.5.  Neither more nor less is required.

Finally we note that in a bench trial, the trial court is required to make specific findings when delivering its verdict only upon request of a party made prior to the verdict.  Super. Ct. Crim. R. 23 (c); *Markowitz v. United States*, 598 A.2d 398, 407 n.9 (D.C. 1991).  Carrell made no such request.  Additionally, after the trial judge made some specific findings, *sua sponte*, Carrell made no objection or request for additional findings.  Thus, his claim of error here is subject to plain error review, at best.  *Tyson v. United States*, 30 A.3d 804, 806-07 (D.C. 2011) ("Even if we were to conclude that appellants entitlement to specific findings was not waived . . . he must demonstrate plain error in order to prevail on appeal").  There being no error at all, perforce there is no plain error.  *See United States v. Olano*, 507 U.S. 725, 732 (1995).

*Affirmed.*

SCHWELB, *Senior Judge,* dissenting: "This is the kind of case that could persuade the cynical reader who believes he has seen it all that something new and different may still be lurking around the corner." *Homan v. Goyal*, 711 A.2d 812, 814 (D.C. 1998). At issue is whether the trial judge correctly stated the elements of the crime of threats to do bodily harm. D.C. Code § 22-407 (2001). According to the judge, the government was required to prove beyond a reasonable doubt that the defendant, Lee Carrell, (1) spoke words or otherwise communicated to the complaining witness words (2) that would cause a person to reasonably believe that he or she would be seriously harmed if the event occurred; and (3) *that he intended to utter the words that constituted the threat*. (Emphasis and numerals added.) Carrell has no quarrel with the judge's statement of the first and second elements, but he contends that the third was incorrect, and that the government should instead have been required to prove that Carrell "intended to utter these words as a threat."

The unusual feature of this case is that over a thirty-year period, this court has used the language advocated by Carrell on five occasions and the competing articulation urged on us by the government and adopted by the trial judge in only three. Because the earliest of these eight cases – *Campbell v. United States*, 450 A.2d 428, 431 n.5 (D.C. 1982) – used the phrase "intended to utter the words that

constituted the threat" but did not specify that the defendant must have "intended to utter these words as a threat," the government contends, and the majority apparently agrees, that the court is required by *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971), to adhere to the *Campbell* articulation and to reject the alternative language used in five of our seven post-*Campbell* decisions, beginning with *United States v. Baish*, 460 A.2d 38, 42 (D.C. 1983), decided one year after *Campbell*. For the reasons set forth in some detail below, I do not agree with this contention, and I conclude, to the contrary, that the issue is an open one under District of Columbia law and that we should now adopt the *Baish* articulation.

My colleagues also maintain that the *Campbell* language is correct because threats to do bodily harm should be treated as a general intent offense and that proof of specific intent should not be required. Although I find this issue difficult in light of some of the federal decisions cited by the majority, I nevertheless conclude that affirmance is not warranted.

## I.

I begin by addressing a preliminary issue. The court holds, and I agree, that whether one applies the "intent to utter the words" standard advocated by the

government or the "intent to utter these words as a threat" standard favored by the defendant, the evidence, as described in the majority opinion, was sufficient to establish Carrell's guilt beyond a reasonable doubt. In addressing a claim of evidentiary insufficiency, we must of course view the record in the light most favorable to the prosecution. *In re S.W.*, 45 A.3d 151, 154 (D.C. 2012). Although the words used by Carrell: "I could kill you. I could kill you. I could fucking kill you right now" do not explicitly describe what Carrell proposed to do in the future, as a threat ordinarily would, I do not doubt that under the circumstances, including Carrell's simultaneous assault on Ms. Ringenburg (and the unambiguously threatening remarks he made the previous evening to the effect that he would kill her friends or family if she called them to defend her) could reasonably be viewed by an impartial trier of fact as an implicit threat. This would be true even if the government is required to prove, as I believe that it should be, that Carrell intended his words as a threat.

This does not mean, however, that it is of no consequence whether the judge applied the "intent to utter the words" standard or the more exacting "intent to utter the words as a threat" test. It would not be accurate to say that the government necessarily wins either way. On the contrary, the result of the appeal could well turn on which of the two articulations was applied in the court's analysis. If the

government had to prove only that Carrell intended to utter the words, then the judge's affirmative credibility finding as to Ms. Ringenburg's testimony effectively disposed of the case. If, on the other hand, the prosecution was required to prove that Carrell intended to utter the words as a threat, it is not at all obvious that a reasonable trier of fact, whether judge or jury, would inevitably convict him. Guilt or innocence is a question for the trier of fact, and at this stage of the proceeding, the judge need not – indeed, she may not – view the record in the light most favorable to the prosecution. Rather, she must presume innocence and acquit unless the government proves the defendant's guilt beyond a reasonable doubt. "The reasonable doubt standard of proof requires the factfinder to reach a subjective state of near certitude of the guilt of the accused." *Rivas v. United States*, 783 A.2d 125, 133 (D.C. 2001) (en banc). In this case, the judge having believed that the relevant events had occurred as Ms. Ringenburg described them, there was no plausible way to acquit Carrell of the assault charge against him. Whether, however, "I could fucking kill you right now," despite its phrasing as to what Carrell would be able to do, was intended to threaten Ms. Ringenburg regarding what he would do, is far less obvious and strikes me as a classic question of fact for the jury (or, in this case for the judge). We therefore cannot decide the appeal, in my judgment, without first determining whether the trial judge's

statement of the elements of the offense was consistent with the law of this jurisdiction.

## II.

As noted above, an astonishing feature of this case is that in addressing the question whether the prosecution was required to prove "intent to utter as a threat" rather than only "intent to utter the words," both parties have been able to cite apparently impressive supportive District of Columbia precedent. Over the past three decades, there have been at least eight decisions by our court purporting to recite the elements of the offense. Only three of these decisions, including *Campbell*, the earliest of the eight, use the government's articulation in setting forth the intent element of threats to do bodily harm. *See also Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001) (citing *Campbell*); *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006) (citing *Evans* and *Campbell*).[1] In none of

---

[1] The government also cites *Gurley v. United States*, 308 A.2d 785, 787 (D.C. 1973), but as I read that opinion, it neither explicitly nor implicitly addresses the precise issue here presented. Further, in my view, *Tolentino v. United States*, 636 A.2d 433, 435 (D.C. 1994); *Beard v. United States,* 535 A.2d 1373, 1378 (D.C. 1988); and *Smith v. United States*, 337 A.2d 499, 503 (D.C. 1975), cited by the majority, likewise did not address the question in dispute here, but concerned

(continued…)

the three, however, was there any issue raised as to whether the prosecution must prove intent to threaten or merely intent to utter. *Campbell* dealt primarily with the admission of "other crimes" evidence; *Evans* concerned the question whether "attempted threats" is a crime; and *Joiner-Die* addressed the sufficiency of the evidence and the allegedly improper curtailment of cross-examination. Because the issue presented in the present appeal did not arise in any of these cases, it could not have been authoritatively decided.

In five of the eight cases, including the three most recent ones, the court stated that "the government must prove . . . that the defendant *intended to utter these words as a threat*." *Baish*, 460 A.2d at 42 (emphasis added) (citing *Campbell* and *Gurley*); *Clark v. United States*, 755 A.2d 1026, 1030 (D.C. 2000) (citing *Baish*); *Jenkins v. United States*, 902 A.2d 79, 86 (D.C. 2006) (citing *Clark* and *Baish*); *Hunter v. United States*, 980 A.2d 1158, 1163 (D.C. 2009) (citing *Jenkins*); *In re S.W.*, 45 A.3d at 155 (citing *Clark* and *Baish*). In none of these five cases, however, just as in the three which adopt the *Campbell* language, was the court presented with the issue now before us. *Baish* primarily involved territorial

---

 (…continued)
the second element of the offense of threats, rather than the third, which deals with the required intent.

jurisdiction; *Clark* raised the question whether evidence of a threat made following an unlawful arrest should be suppressed as fruit of the poisonous tree; the issue in *Jenkins* was whether ostensibly harmless words constituted a threat because of the context in which they were spoken; *Hunter* raised an issue of merger; and *In re S.W.* dealt largely with First Amendment questions that may arise in construing the threats statute. Use of the language in *Baish* rather than that in *Campbell* would not have affected the result in any of the five.

Finally, although *Campbell* was decided in 1982 and *Baish* in 1983, no opinion in either line of cases contains any expression of disagreement with the language of the other group. Indeed, *Baish* cited *Campbell* as precedent. Evidently, although the court in *S.W.* observed that the intent element "has been subject to controversy" due to the two "competing formulation[s]" described above, 45 A.3d at 155 n.10, no judge of this court had suggested in any published opinion that we confront the apparent difference between the two articulations until this case came along.[2] The two lines of cases have thus coexisted in our jurisprudence for three decades. There has been no "adversarial crossing of

---

[2] In *Jenkin*s, 902 A.2d at 87 n.11, the government made the same argument based on *M.A.P. v. Ryan* as it makes in this case, but we found it unnecessary to reach it.

swords," *Murray v. District of Columbia*, 870 A.2d 25, 27 (D.C. 2005), in any of our cases with respect to which of the two competing statements of the intent element correctly applies the law of this jurisdiction. Under these circumstances, I am unable to agree with the government or with my colleagues in the majority that we are required by *M.A.P. v. Ryan*, or by *Thomas v. United States*, 731 A.2d 415, 420 & n.6 (D.C. 1999), to adhere to the language of *Campbell* and to reject that of *Baish* and of the four decisions that have followed *Baish*.

Nothing in *M.A.P. v. Ryan* requires a division of this court to follow language in a prior case which is unnecessary for the decision of that case. *Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1005 (D.C. 1994) (citations omitted). In *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996), we stated that "[t]he rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question" (quoting *Fletcher v. Scott*, 277 N.W. 270, 272 (Minn. 1938) (citations omitted)). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Id.* (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)); *see also Thompson v. United States*, 546 A.2d 414, 423 n.14 (D.C. 1988) (quoting *Webster*). There is, moreover, no consensus among the

judges of our court as to which of the two articulations – *Campbell* or *Baish* – would have been more appropriate here (although the *Baish* language has been used more often).[3]  If we were nevertheless required to follow *Campbell* and not *Baish*, this would have to be because *M.A.P. v. Ryan* and *Thomas* should be deemed so inflexible that no distinction may be made between issues contested in the earlier case and those not contested.  We would also be required to ignore the apparent rejection of the language of *Campbell* in a majority of our decisions since that case was decided.  *Albertie* and *Sierra Club* establish that the doctrine of *M.A.P. v. Ryan* was not intended to be so expansive and rigid.

---

[3]  Perhaps this is not a case in which "statistics . . . tell much, and courts listen," *cf. Harris v. District of Columbia Comm'n on Human Rights*, 562 A.2d 625, 632 (D.C. 1989) (quoting *State of Alabama v. United States*, 304 F.2d 583, 586 (5th Cir. 1962)), but it is interesting to note that while six judges have written or joined opinions adhering to the *Campbell* phrasing (a seventh concurred only in the result in *Campbell*), thirteen have written or joined opinions adopting the *Baish* articulation (a fourteenth judge concurred only in part in *Hunter*).  Three of the six judges who have written or joined *Campbell* language opinions, including one of the two judges in the majority in *Campbell* itself, have also written or joined opinions approving the language from *Baish*.  This suggests that several judges – perhaps most – may believe that there is not a great difference between the analyses in *Campbell* and *Baish*, especially as the court in the latter case cited the former as authority.  In any event, if the votes of the three judges who have agreed to both alternative phrasings, are excluded from my somewhat unorthodox "poll," then we have, as it were, ten votes for the *Baish* language and only three for *Campbell*.  I do not suggest that these numbers are dispositive, but they do add a little potentially instructive context.

It is true that in *Thomas*, 731 A.2d at 420, we stated that "the rule is fundamental in our jurisprudence that no division of this court will overrule a prior decision of this court." *Washington v. Guest Servs.*, 718 A.2d 1071, 1075 (D.C. 1998) (quoting *M.A.P. v. Ryan*, 285 A.2d at 312) (internal quotation marks omitted). "This court will not lightly deem one of its decisions to have been implicitly overruled and thus stripped of its precedential authority." *Lee v. United States*, 668 A.2d 822, 828 (D.C.1995). Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one. *See Taylor v. First Am. Title Co.*, 477 A.2d 227, 230 (D.C. 1984); *Thomas*, 731 A.2d at 420 n.6. In most circumstances – arguably in all circumstances, my colleagues perhaps assume — that would be that. Nevertheless, I know of no case in which the rule of *M.A.P. v. Ryan* has been applied to a situation comparable to the one before us here, in which not a single one of the decisions relied on arose in a case presenting the question as to which of the two articulations of the intent element is correct, so that this issue has never previously been litigated in this jurisdiction. Further, over the years, there appears to have been more support in the court for the 1983 articulation than for the one in 1982. Accordingly, I disagree with the government and the majority opinion as to the applicability here of *M.A.P. v. Ryan*.

**III.**

If, as I believe, neither *Campbell* nor *Baish* resolves the issue before us, then it surely remains an open question in this jurisdiction. As I see it, the notion that one can threaten another without intending that the words be uttered as a threat is, at least, counter-intuitive. As far as I am aware, folks threaten others intentionally, not inadvertently (except perhaps in situations in which nobody was meant to hear the threat). As this court observed in *Baish*, 460 A.2d at 42, and the majority reiterates here, *ante* at 9, BLACK'S LAW DICTIONARY defines "threat" as "a communicated intent to inflict harm on any person or on property." Intent to threaten is thus the essence of the concept. In *Postell v. United States*, 282 A.2d 551, 553 (D.C. 1971), which the majority also quotes, *ante* at 8, we concluded that "the gist of the crime is that the words used are of such a nature as to convey a menace or fear of bodily harm to the ordinary hearer." To "convey a menace" surely brims with intent to threaten. As a practical matter, to require proof only of intent to utter, and not of intent to threaten, would take any intent requirement out of the statute, for it would be a rare case indeed in which threatening words were uttered inadvertently or by accident, rather than intentionally. Yet although the statute does not state what intent is required, all of our cases, whether they follow *Campbell* or *Baish*, recognize that intent is the third element of the offense.

My colleagues in the majority insist that our en banc court has resolved the issue now before us in *Holt v. United States*, 565 A.2d 970, 971-72 (D.C. 1989) (en banc). I disagree. The issue in *Holt* was whether intent to extort was an element of our felony threats statute. A majority of the court[4] held that it was not. In the present case, *Holt* would support a holding that the government was not required to prove that Carrell intended to kill Ms. Ringenburg, or perhaps to do her physical harm. The decision does not mean, however, that the prosecution need not prove that the threat was made intentionally. It is worth noting that the government does not rely on *Holt*, or even cite that case in its brief.[5]

---

[4] Whatever goes around comes around, but not always as might be anticipated. In *Holt*, decided almost a quarter of a century ago, I voted with the en banc majority to affirm the defendant's conviction, while Judge Newman joined Judge Julia Cooper Mack's powerful dissent. Now it is I who am outvoted! *Sic transit gloria*!

[5] Aside from its failure to cite the principal authorities relied on by my colleagues in support of their decision, the government has not treated the issue of intent in this context as one of major importance. In its brief, it has devoted only a single paragraph to the issue, primarily to argue that *M.A.P. v. Ryan* controls and nullifies the *Baish* line of cases. Moreover, in *In re S.W.*, 45 A.3d at 155 n.10, which was decided in 2012, and which is the last of the relevant cases to reach this court, the government did not contest, in the trial court or on appeal, the proposition that proof of intent to threaten was required.

Despite what I regard as the common sense of the issue – with few if any exceptions, threats are, by definition, intended to threaten – this case is difficult for me in light of the federal appellate decisions cited by the majority, *ante* at 16-17. *See, e.g.*, *United States v. DeAndino*, 958 F.2d 146, 148-50 (6th Cir. 1992). These decisions construe 18 U.S.C. § 875 (c) (2012), which is similar (though not identical) to our statute in relevant respects, and a majority of them support the government's position in this case, largely on the theory that threats are a "general intent" crime.[6] There is, however, contrary authority as well. *See, e.g. United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (§ 875 (c) requires proof of intent to threaten); *United States v. Sovie*, 122 F.3d 122, 125 (2d Cir. 1997) (it is not necessary to prove that the defendant had the specific intent to carry out the threat, but only that he intended to communicate a threat); *Robinson v. United States*, 506 A.2d 572, 574 (D.C. 1986) (in analogous prosecution for "intent to frighten" assault, *i.e.*, threats, prosecution must prove that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct); *Com. v. Spencer*, 663 N.E. 2d 268, 271 (Mass. Ct. App. 1986) (in case of a threatened assault, "there must be an actual intention to cause

---

[6] In its brief, the government alludes to what it calls the "well-accepted understanding that threats are a general-intent crime." The only authority it cites for that proposition is *Jones v. United States*, 477 A.2d 231, 239 (D.C. 1984), a first-degree murder case that did not involve the threats statute at all.

apprehension.")  Further, although the phrasing of statutes prohibiting threats of bodily harm (as a form of assault, or as an independent offense) varies widely, "the gravamen of the offense is the intentional placing of a person in fear, [and] the intent to cause fear is an essential element of the crime."  31A Am. Jur. 2d *Extortion, Blackmail and Threats* § 48 (2013).

Because the intent of the threats statute with respect to the precise question before us is not at all clear, I believe that this is an appropriate occasion to include in our calculus the venerable but fundamentally just "rule of lenity."  As the Supreme Court explained in *United States v. Bass*, 404 U.S. 336, 347 (1971) (quoting *United States v Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1953)):

> In various ways over the years, we have stated that 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'

*Accord, Ruffin v. United States*, No. 12-CF-596, 2013 WL 4746792, at *4 (D.C. Sept. 13, 2013) (discussing the District's felony threats statute) ("criminal statutes are to be strictly construed and should not be interpreted to extend criminal liability

beyond that which [the legislature] has plainly and unmistakably proscribed"). Accordingly, "[t]he rule of lenity requires ambiguous criminal statutes to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008); *accord, McBoyle v. United States*, 283 U.S. 25, 27 (1931) (per Holmes, J.); *United States v. Wiltberger*, 18 U.S. 76, 95 (1820) (per Marshall, C.J.). In this case, as in *Lemon v. United States*, 564 A. 2d 1368, 1381 (D.C. 1981) we are obliged to "consider the rule of lenity, which provides that criminal statutes should be strictly construed and genuine ambiguities resolved in favor of the defendant." To be sure, the rule of lenity is a "secondary canon of construction." *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). It "serves as an aid for resolving an ambiguity [and] is not to be used to beget one." *Callanan v. United States*, 364 U.S. 587, 596 (1961). Simply put, it is the last resort, not the first. When, however, the intent of the statute cannot be determined from its language, purpose, or legislative history, any remaining ambiguity is to be resolved in favor of the accused, in conformity with the rule. *Washington*, 954 A.2d at 948-49.

In this case, the language of the statute does not answer the issue before us, no pertinent legislative history has been cited to us, and the coexistence for thirty years of the two competing lines of authority itself suggests that with respect to

what is required to prove intent, resort to the rule of lenity is warranted and, in my view, should carry the day. Surely, the legislature has not "unmistakably proscribed," *Ruffin, supra*, alleged threats where no intent to threaten has been shown.

In sum, there being no binding authority either way, I would hold, for the reasons stated above, that the prosecution must prove, in a threats case such as this, that the defendant intended to utter the words as a threat. I would affirm Carrell's conviction for assault, vacate his conviction for attempted threats, and remand the case to the trial court for further proceedings. I would not necessarily require the judge to hold a new trial, for she could, in the exercise of her discretion, make what I regard as the requisite finding as to Carrell's intent on the existing record.

I respectfully dissent.[7]

---

[7] At the conclusion of its opinion, the court states that by failing to request certain specific findings, Carrell has waived the claim that the judge erred by failing to do so. *See* Super. Ct. Crim. R. 23 (c). I agree. I believe, however, that although Carrell's brief could be clearer on the point, his basic contention is that the judge applied the wrong legal standard.